Our next case for argument is 21-1149, BlephEx v. Myco Industries. Mr. Lurie, please proceed. Good morning, Your Honors. This is Tom Lurie on behalf of Myco and John Choate. Today, we're here asking the Court to vacate an improvidently issued preliminary injunction. In our brief, we've raised three issues. Today, I want to focus primarily on the issue of validity. BlephEx did not meet its burden to show that Myco's validity challenge lacks substantial merit, which is the standard it had to meet. There's one reference- Counselor, can I just interrupt you for a second? I'm sorry, but I want to make sure as a threshold matter. You raised three issues, none of which relate to the other three factors for a preliminary injunction analysis, right? Likelihood of success on infringement, public interest, balancing of interest. You really just are putting most of your eggs in this basket as well as the fact that you claim there was an upsetting of the status quo. Yeah, and an overbroad injunction. Yes, Your Honor, that is correct. Okay. I'll make sure where our focus is. Yes, thank you. The law is, and it's not disputed, that if the validity of the patent is in question, the preliminary injunction should not issue. I don't think that's a fair statement of the law. I mean, it's pretty clear it has to be more than just in question, right? I'm sorry. I didn't mean to suggest that just a mere question was enough. My point was that if there's a substantial question on the issue of validity, that defeats a preliminary injunction request. That's what I was trying to say. Okay. On this question, you agree, I assume, that what a prior art reference shows is a correct? So, to the extent that the court analyzed what the prior art showed, what, I don't even know how to pronounce this, Nishiman? Is that how you pronounce that? I pronounce it Nikoman, but I'll get into that. Okay, Nikoman. What Nikoman showed, the prior art, the district court's conclusions about what it showed, we would have to find to be conclusions on that point, right? Yes. To the extent that there would be fact issues that are disputed, such as that, that would be true. But here, the district court's fact findings, in terms of the key fact findings, are really fact findings that favor a resolution in Mico's favor. It's his legal conclusion or his failure to apply the right legal test for anticipation and obviousness that we take up as the primary issue. So, you don't dispute the district court's characterization of figure three in Nikoman? Well, I guess that's a broad question, but his characterization, let me be specific, his characterization of figure three is that it's an electromechanical device that dispenses, and this is from appendix 26, dispenses the microabrasive and oil to any appropriate material, such as an applicator slash device slash wand. We agree with that. That's exactly what figure three shows. Well, here's the issue. You don't really address paragraph 83, and yet you have to go back to paragraph 66 that states that the composition may just be dispensed in any way, and then it refers to the dispensing or the applicator in two different ways, and then paragraph 83 actually then refers back to that. So, in order for there to be anticipation, one would have to conclude that what was being shown in figure three is not what was being dispensed, but what it was being dispensed by, not where it was being dispensed to, in other words. Well, excuse me, paragraph 83 is a relevant paragraph, but it's not the primary focus of our analysis or argument. Yeah, but the district court focused on it. I'm sorry? The district court focused on paragraph 83. It did. It did. And there's nothing wrong with that focus. To anticipate, the applicator referred to in paragraph 83 would have to be the thing dispensing the composition, not the thing to which the composition is being dispensed, and the district court found, as a matter of fact, that paragraph 83 didn't satisfy. I mean, that figure three didn't show what you thought it did. Well, figure three doesn't show a swab on the end of the applicator, if that's the question you're asking, and we don't disagree with that. We're not saying that figure three shows that. What we're saying is the description of figure three, in conjunction with figure two and the other paragraphs that relate to those figures, disclosed to one of ordinary skill in the art, who's a medical doctor or doctor of optometry with some years of experience in treating these things, that the figure three device can be used with a figure two wand. Figure two is called a wand, and it's undisputed that it has a swab. And the district court found that figure three shows the handheld device dispensing the micro abrasive in oil to any appropriate material, such as an applicator slash device slash wand. And our position is that when you read Nickerman's express disclosures, that a wand is one of the things that figure three's handheld device can dispense onto, and the only description of wands in Nickerman is with respect to figures one and two, both showing wands with swabs, that that is an express disclosure and anticipatory disclosure of using the figure three device. So you are expressly disagreeing with the factual conclusion that the applicator referred to in paragraph 33 would have to be the thing dispensing the composition, not the thing to which the composition was being dispensed, right? I mean, we'd have to find that that conclusion by the clearly erroneous for the reasons that you're saying. Well, to the extent that... So paragraph 83 is talking about a kit that is sold, and it's explaining that among the things that can be sold in the kit is an applicator, and it and it says that applicator, e.g., pad or swab. It's not specifically referring to paragraph 65 or figure three or even figure two necessarily. So it's not clear to me that that is a relevant... I agree that he said that, but it's not particularly relevant to the question before the court, because whether or not the kit has an applicator that's a swab doesn't address the disclosures in Nickerman that I talked about in paragraphs 65 and 66 in the district court's findings regarding those. Well, you would agree that paragraph 66 states that the composition can be dispensed in different ways, and it refers to it in two different forms, is from an applicator or to an appropriate material such as an applicator, right? Right. So it says the material may be dispensed in any way and to any appropriate material. So in both sentences, say a wand is one of those ways or materials. So, again, we're back to the point that a wand is something that may be used to dispense and is also a material that can be used to dispense. And that's what the district court found, and we agree with that. And, again, going back to figures one and two, the description of the wand is, has a swab on it. And there's also paragraph 79 that says any of these... Counsel, if figure three dispenses onto a wand, how would that possibly anticipate? If it dispenses onto a wand, how would it anticipate? Because then you have the combination that Blefax says is missing. You have an electromechanical device with an operably attached swab. I see my time is up and I'm in my rebuttal time. I'm happy to answer further questions. Thank you, Counsel. Let's hear from Mr. Armenio, please. Thank you, Chief Judge Moore, and may it please the court. Here, the district court had full a motion to adjust the preliminary injunction at a further hearing. The district court gave Michael every opportunity and came out with the findings that each of the four preliminary injunction factors all strongly favored Blefax. We respectfully submit that the preliminary injunction should be affirmed. With respect to the particular issue that Counsel has focused on in this argument, I think Judge O'Malley's questions go right to the heart of the matter. Michael would need to show a clearly erroneous finding of fact to succeed on their current argument. They have not done so and they cannot do so. Judge O'Malley has pointed out there is a big difference between what the abrasive composition is dispensed by versus what it is dispensed to. We know from Michael's own brief that they say the micro-abrasive composition is the essence of the Nickeman invention. They say that in their own brief. Even if we look at what is dispensed by or what it is dispensed onto, there is no suggestion of combining the figure 2 swab and the figure 3 hand-held applicator. What is your response? Your friend on the other side said that figure 3 dispenses onto a wand and therefore it anticipates. He says the opposite of what you are just saying. Right. What I would respectfully suggest is that there would be no reason to have a double dispenser. There is nothing in the Nickeman reference that says you would need to dispense it from a hand-held applicator and then dispense it onto another applicator, a swab of some kind, and then as a third step touch the eye. There would be no reason for a hand-held dispenser to just then dispense it onto a swab and then the swab dispenses it onto the eye. Moreover, that does not even get close to discussing the actual method of Claim 16 where the swab has to move relative to the electromechanical device in Claim 16 and then the swab has to contact the eyelid margin to contact and impact the removable debris to clear the eyelid margin. There are multiple parts of the claim that even if there were a mere combination would still not be reached in this method of treatment claim. When we look at the Nickeman, I think one thing I would also note from Nickeman is Nickeman itself points out, for example, in paragraph 60, that appendix 1447, that you need to, quote, be minimizing unnecessary abrasion, damage, or irritation to the eye region or sensitive periocular region, close quote. So even Nickeman in the reference itself is saying be careful. Your eyelid margin is sensitive. Don't irritate it. Don't unnecessarily abrade it. Michael has admitted that this microabrasive composition is the essence of Nickeman, but they're trying to combine Nickeman in a way that the examiner in issuing the 087 found would not apply for algebra brush and swab because of the danger, safety danger, to the eye region and pointed to the pink point IPR decision in the related 718 application, excuse me, patent, where the PPAB reached the same conclusion, that there are serious safety concerns about having a moving swab or moving anything near the eyelid. And Nickeman itself acknowledges that. So even if counsel for Michael could convince this court that there was a clearly erroneous finding of fact by the district court, which Blackfex would respectfully submit it cannot do, there are still other aspects of the claim that cannot be reached that are not reached by Michael's argument. And there is the overriding concern about safety near the eyelid margin that Michael has never addressed, that Nickeman acknowledges, that the examiner acknowledged in granting the 087, that the PPAB acknowledged in the 718 patent in the same family, and that the district court noted. Counsel, judge Moore, I'm just confused. I'm not following your argument. It doesn't track with the briefing that I read. Where is all this coming from? I apologize, Judge Moore. I was trying to respond to what I thought was the question. And it was, is this combinable? And my answer was no. And then I was asked, well, what if it could be combined? Is there anything more in the patent? And I was pointing to the 718, which is what we point to on page 23 of our brief. For example, we show that... Counsel, are you focusing on obviousness? I mean, I'm sorry. I thought that we were focusing on anticipation. Yes, I'm trying to focus on anticipation, Your Honor. And what I'm saying is in connection with anticipation for Michael, even if they could combine the two pieces as they suggest, which we dispute, it would still not anticipate the method of treatment claim of claim 16. So moving forward, Michael has not been able to identify any clearly erroneous finding of fact by the district court. They don't make any other argument. The only last thing I would point out is that the argument by Michael in its briefing about at once envisaging certain features is an argument they did not present in the district court and an appellate brief. And so we believe that is an argument that comes too late. And it's certainly also an argument that is rebutted by both the Nickerman reference itself and the paragraph 87 generalities that they point to. And also the examiner's use of Nickerman searching and consideration of Nickerman and no finding that Nickerman disclosed the claims method of treatment. Counsel, you referred to a signer estoppel in your brief, but isn't there a problem with the fact that the district court never made any findings on that? And what we're supposed to be reviewing now is the district court's weighing of the preliminary injunction factors. So I don't see how we could put that into the mix at this point. Could we? Understood. Thank you, Your Honor. Your Honor is 100% correct. The district court did not reach that issue at all. It's an argument that we made below. We have stated it merely in the alternative, but Your Honor is 100% correct. The judge only made one factual finding that's relevant. And when he said that the 087 patent is related to the 275 application, that is the subject of the assignment. So the district court did make that factual finding, but there was no further discussion by the district court of the signer estoppel doctrine. That factual finding that the 087 patent is related to the 275 application that was assigned would be reviewable by the court. But again, I 100% agree that's the only finding the district court made relevant to a signer estoppel. Uh, counsel, when it comes to anticipation, um, do you agree there would be a substantial question if figure three, rather than having what looks like a straw actually had a swab on the end of it? It, it would, it would depend, Your Honor, in my view on what the swab was doing, right? Because it isn't just, um, buffering, if you will, or padding the end of the applicator. So you don't hit what, what if it was vibrating, rotating, rubbing, or otherwise moving? If there was a disclosure of a swab that was spinning and the swab itself was designed to much different than, uh, what we have before us here. And now that would be closer certainly, but what we found here is the examiner and the district court and the P tab and the related 718 patent IPR all found that you wouldn't, uh, combine that and things. And the reason you wouldn't combine it is for safety concerns. And I would respectfully suggest that when there's a disclosure of an IPR, the district court does not envisage things that are unsafe. And that, and this would be a subject for which, if Michael wanted to really press this argument, there needed to be some kind of... Counselor, you keep, you keep referring to this other IPR and safety concerns. Was the Nikkerman reference, the reference at issue here that maybe anticipates part of that IPR? Nikkerman was not the subject of the discussion in the IPR. What was the discussion in the IPR was an electromechanical drive, the algebra and the swab as well. So when we look at the swab as disclosed in, for example, Stevens. And so what we have is not Nikkerman in the point IPR, but what we have is the concept of a swab, which in one reference in the IPR was held in a person's hand and gently applied to the eyelid versus an electromechanical drive, like the algebra brush and what the PTAB discussed and what the examiner in issuing the 087 patent referenced in their discussion, the lack of motivation and rationale from that pain point IPR. What we see is that didn't make sense to the examiner. And they said a person of ordinary skill in the art would not do it. Okay. Counsel, let's hear from the opposing side. You have some rebuttal time left, Mr. Lurie. Yes. Thank you. Let me take up the first point that Mr. Arminio made, which is that there's no suggestion of combining in Nikkerman. Paragraph 79 specifically says any of these methods of applying the compound may be combined with any other method. And the only three figures that come before that are figures one, two, and three, which specifically show figures one, figure one shows a hand holding a wand that on its tip has a swab. And Nikkerman says that's chafing the eyelid margin. Figure two shows a wand with a swab on the tip as well. It doesn't indicate what's holding it or what's moving it, but it also says it's moving it and chafing. And then figure three shows the handheld device that Nikkerman says is chafing the eyelid margin the same way. So the chafing method, and each of them is applying the compound are combinable. And Nikkerman expressly says that in paragraph 79. Mr. Arminio said there'd have to be a double dispenser. I don't understand that statement because if figure two is attached to the handheld device of figure three, which it very well could be, there is no double device that's necessary. Well, very well could be. Very well could be. Is it the standard for anticipation? Is it, how does it disclose every single element? It does. It does. But again, we don't have to prove invalidity here. We just need to raise a substantial question. No, you have to prove, the patentee has to prove by a preponderance of the evidence that you're not likely to win by clear and convincing evidence. So, I mean, Titantire makes it very clear that it's not just a question of you saying we're asserting invalidity. Okay. Hold on. Can I just correct Judge O'Malley? Because this is fun and I never get to correct her. Actually, what you have to approve, since this is on appeal, is the district court clearly erred in finding the contrary. Better yet. Better, even better. Well, and I hate to weigh into this too, but in Amazon, for example, the test was stated as the patent owner has to prove that invalidity lacks substantial merit. And that's pages- Yeah, but Titantire is the clearest description of the methodology that's to be employed and how the law works. And that's not, and Titantire makes it clear that that's not enough. It's not enough. Well, we don't have to prove invalidity as a matter of the- You have to raise a question and then the burden shifts to the patent holder to show by a preponderance of the evidence that you're not likely to prevail ultimately at trial where your burden would be clear and convincing evidence. And that's what the district court found by a preponderance of the evidence was shown. It did. And that's the error we believe based on this undisputed record effectively. The record itself, I mean, if you read Nekoman, it's not unclear what it says. I mean, this is a case very much like Blue Calypso where the reference there was Paul, P-A-U-L. And the court said the board then recognized that although Paul did not explicitly disclose an example of a particular campaign, it was about a piece of contemplate combining the disclosed functionalities. And it pointed to what Blefex calls the boiler plate. It was a much broader boiler plate than paragraph 79. It basically said, you know, if there's hardware or software, anybody could use it. And that was enough. And that is enough. Now, again, we're not saying we absolutely win on that, but that is good enough for a reasonable If you read Amazon, Blue Calypso, that's the standard we have to meet that could a reasonable jury find in our favor. And absolutely, under this law, a reasonable jury could find that Nekoman anticipates claim 16. Now, the last thing I want to take up very briefly is the safety concept. Nekoman addresses safety. And it says his treatment is safe and even chafing is safe. I guess my time's up and I'll end there if there are no other questions. I thank both counsel for their argument. The case is taken. Thank you. The Honorable Court is adjourned until this afternoon at 2pm.